834 So.2d 785 (2002)
Theodore PRITCHETT et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
2000850.
Court of Civil Appeals of Alabama.
February 22, 2002.
Certiorari Denied May 17, 2002
*786 Alexander W. Jones, Jr., and Frank H. Tomlinson of Pritchard, McCall & Jones, L.L.C., Birmingham; Wyman O. Gilmore, Jr., Grove Hill; and Syliva Davidow, Anita Kawaja, and DéLisa Simmons of Fleming & Associates, L.L.P., Houston, Texas, "of counsel," for appellants.
Edward S. Sledge III, Walter T. Gilmer, Jr., and Todd P. Resavage of McDowell, Knight, Roedder & Sledge, L.L.C., Mobile, for appellee.
Alabama Supreme Court 1011129.
THOMPSON, Judge.
Theodore Pritchett (hereinafter "Pritchett"), as a putative class representative,[1] filed an action against State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") alleging breach of contract. The facts that give rise to Pritchett's claim are as follows:
In August 1996, Pritchett was involved in a traffic accident that caused damage to his automobile. State Farm paid Pritchett $2,378.22 for the cost to repair the damage to the automobile. In his complaint in this action, Pritchett sought to recover from State Farm that amount representing the diminished value of his automobile, or the difference in the value of the automobile before the collision and the value of the automobile after the repairs made necessary by the collision. See Joiner v. Holland & Woodard Co., 652 So.2d 261, 262 (Ala.Civ.App.1994) (diminished value is the difference between the value of the property before and after the damage); Alabama Pool & Constr. Co. v. Rickard, 418 So.2d 149, 151 (Ala.Civ.App.1982) (the "diminished value" measure of damages is the difference in the property's market value before and after the alleged damage). Pritchett maintained in his complaint that loss attributable to diminished value is inherent in every instance in which an automobile is damaged in a collision.[2] State Farm denied that the terms of the applicable insurance policy required it to compensate its insured for any alleged inherent diminished value of a repaired automobile. *787 We note that the parties did not on appeal present to this court the issue whether loss attributable to diminished value is inherent in any automobile that has been damaged and subsequently repaired; therefore, we do not address that issue.
The automobile insurance policy that Pritchett purchased from State Farm provides in relevant part[3]:
"COMPREHENSIVE-COVERAGE G....
"We will pay for loss to your car caused by collision but only for the amount of each such loss in excess of the deductible amount. If the collision is with another motor vehicle insured with us, you do not pay your deductible if it is $100 or less as we pay it.
"If your loss is payable as damages under the liability coverage of another policy issued by us, we will pay for such damage or loss only once, either under your policy or the liability coverage of the other policy.
"Collisionmeans your car upset or hit or was hit by a vehicle or other object.
". . . .
"Limit of LiabilityComprehensive and Collision Coverages
"The limit of our liability for loss to property or any part of it is the lower of:
"1. the actual cash value; or
"2. the cost of repair or replacement.
"Actual cash value is determined by the market value, age and condition at the time the loss occurred. Any deductible amount that applies is then subtracted.
"The cost of repair or replacement is based upon on of the following:
"1. the cost of repair or replacement agreed upon by you and us, or
"2. a competitive bid approved by us; or
"3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the car is to be repaired as determined by a survey made by us. If you ask, we will identify some facilities that will perform the repairs at the prevailing competitive rate. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. You agree with us that such parts may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers.
"Any deductible amount that applies is then deducted.
"Settlement of LossComprehensive and Collision Coverages
"We have the right to settle a loss with you or the owner of the property in one of the following ways:
"1. pay up to the actual cash value of the property at the time of the loss in exchange for the damaged property....;
"2. pay to:
"a. repair the damaged property or part, or
"b. replace the property or part.
"If the repair or replacement results in betterment, you must pay *788 for the amount of the betterment, or
"3. return the stolen property and pay for any damage due to the theft."
(Emphasis omitted.)
Pritchett moved for a partial summary judgment on the issue of State Farm's liability. The trial court denied that motion. State Farm then moved for a summary judgment. The trial court entered a summary judgment in favor of State Farm. Pritchett appealed to the supreme court, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). After the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). To carry that burden, the nonmoving party is required to present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this court must view the evidence in a light most favorable to the nonmoving party, and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact in favor of the nonmovant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
In its summary judgment in favor of State Farm, the trial court determined that the above-quoted policy language unambiguously provided that Pritchett could recover only the cost of the repair to his damaged automobile and that the policy did not provide coverage for any alleged loss in addition to the cost of those repairs. Thus, the trial court found that the policy language precluded Pritchett's recovery of any compensation from State Farm for the alleged diminished value of his automobile. In support of its judgment, the trial court cited as persuasive authority cases from other jurisdictions that hold that an insured may not recover from his insurer an amount representing the diminished value of an automobile that has been repaired after having been damaged.
In Alabama, diminished value has been recognized as a measure of damages when an action is brought by a third party. See King Motor Co. v. Wilson, 612 So.2d 1153 (Ala.1992) (the plaintiff in a fraud action could recover the amount representing the diminished value of the automobile where experts agreed that the automobile was worth less than an automobile that had not sustained damage and had been subsequently repaired); Coffee County Comm'n v. Smith, 480 So.2d 1194 (Ala.1985) (in an action against the county for property damage, the proper measure of damages was the difference in the value of the property before and after the damage); Robbins v. Voigt, 280 Ala. 207, 191 So.2d 212 (1966) (where the plaintiffs' automobile was damaged in a collision with the defendants' automobile, the correct measure of damages was the difference in the fair market value of the automobile immediately before and after the damage). Those third-party cases are governed by the tort principle that damages should compensate the injured party for his or her loss or injury and should make the injured party whole. Ex parte Moebes, 709 So.2d 477, 478 (Ala.1997) ("Compensatory damages *789 are designed to make the plaintiff whole by reimbursing him or her for the loss or harm suffered.").
This case, however, involves a first-party breach-of-contract claim in which the plaintiff sought damages under the collision coverage of his insurance policy with State Farm. Therefore, contract principles govern the award of any damages in this action, and the language of the insurance policy determines the measure of damages to be recovered.
In his brief on appeal, Pritchett maintains that whether an insured may recover from his insurer for diminished value under an automobile insurance policy is an issue of first impression in Alabama. State Farm, however, contends that Alabama caselaw establishes that an insured may not recover under his insurance policy for the diminished value of his repaired automobile. In support of its position, State Farm cites Home Insurance Co. of New York v. Tumlin, 241 Ala. 356, 2 So.2d 435 (1941).
In Home Insurance Co. of New York v. Tumlin, supra, Tumlin sought to recover the cost of repairing his wrecked automobile from his insurer. Tumlin had purchased the automobile on credit, and the creditor was also named as an insured on the insurance policy under which Tumlin sought to collect damages. The trial court entered a judgment on a jury verdict in Tumlin's favor. The insurer appealed, arguing that the creditor should have been a party to the action, and that Tumlin was not entitled to recover damages without proving that he had discharged the indebtedness to the creditor, thereby obtaining a full interest in the automobile. Our supreme court reversed, holding that the trial court had erred in failing to instruct the jury that in order to be entitled to the entire amount recoverable under the insurance policy, Tumlin was required to prove that he had paid the indebtedness to the creditor. The court then went on to state:
"And it is held that where a policy of insurance provides that the insurer's liability for loss or damage to the property insured shall not exceed `what it would cost to repair or replace the automobile or parts thereof with others of like kind and quality' the insured is entitled to recover only the cost of such repairs or replacements. Such a provision will be construed as a limitation of the insurer's liability and the test or measure of damages which the insured is entitled to recover. Spivy-Johnson Portrait Co. v. Belt Automobile Indemnity Assn., 210 Ala. 681, 99 So. 80 [(1924)]."
Home Ins. Co. of New York v. Tumlin, 241 Ala. at 359, 2 So.2d at 437. We note that it does not appear that the parties in Tumlin raised the issue of the proper measure of damages.
In several other cases, Alabama courts have considered various issues related to the damages recoverable in an action by an insured against his insurer. However, those cases are all distinguishable from the case currently before this court. In Spivy-Johnson Portrait Co. v. Belt Automobile Indemnity Ass'n, 210 Ala. 681, 99 So. 80 (1924), the court held that where a damaged automobile was a total loss, the recoverable damages were the actual cash value of the automobile, but where the damage could be repaired, only the cost of those repairs was recoverable. The issue of the recovery of damages for diminished value was not before the court in Spivy-Johnson. In Langford v. Federated Guaranty Mutual Insurance Co., 543 So.2d 675 (Ala.1989), the issue was whether, where an automobile was a total loss, the insured was entitled to recover the actual value of the automobile as well as its salvage value. In State Farm Mutual Automobile Insurance Co. v. Dodd, 276 Ala. 410, 162 So.2d *790 621 (1964), our supreme court concluded that the insured could maintain a claim of negligent repair against the insurer because policy language similar to that at issue in this appeal imposed a duty on the insurer to repair the insured's automobile. William Penn Fire Insurance Co. v. Tippett, 35 Ala.App. 103, 44 So.2d 23 (1950), involved an erroneous jury instruction on a damages issue, but in that case the court did not discuss diminished value. The court in Home Insurance Co. of New York v. Tumlin, supra, concluded that the "repair-or-replace" language obligated the insurer to pay only for the cost of repairs; however, the issue of diminished value was not presented to the court for its resolution and that issue was not essential to the disposition of the appeal. Therefore, we conclude that that discussion was dicta. After carefully reviewing the foregoing Alabama caselaw, we conclude that none of those cases clearly decided the issue of diminished value.
We note that State Farm, in its brief on appeal, argues that the holding in Tumlin has been "widely recognized" as establishing the law in Alabama that where an insurance policy limits the insured's liability for loss to the cost of repair or replacement, the insured may recover only the cost of that repair or replacement; State Farm cites, among other authorities, Kent v. Cincinnati Insurance Co., (No. CA2001-04-100, Dec. 10, 2001) (Ohio Ct. App.2001) (unpublished).[4] In Kent, supra, the Ohio Court of Appeals, in construing Alabama law, concluded that diminished value is not recoverable in a first-party contract action in Alabama. However, that authority is not binding on the courts of this state. We conclude that the issue whether an insured may maintain an action against his insurer for the diminished value of his automobile damaged in a collision is a question of first impression in Alabama.
Therefore, we must examine the language of the insurance policy at issue in this appeal. Insurance contracts are to be enforced as they are written, assuming that there are no ambiguities in the provisions at issue. Watkins v. United States Fid. & Guar. Co., 656 So.2d 337 (Ala.1994). In Alabama, insurance contracts are construed "liberally in favor of the insured and strictly against the insurer." Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala. 1996). Pritchett argues that under the applicable insurance policy, State Farm was required to pay him for any conceivable loss to his automobile. However, that interpretation ignores the "settlement-of-loss" section of the insurance policy. The settlement-of-loss section provides that State Farm may settle a loss with its insured in one of several ways. The parties agree that where the damaged automobile is deemed to be a total loss, the language of the insurance policy requires State Farm to pay "up to the actual cash value" of the automobile. However, the parties dispute State Farm's liability where the automobile may be repaired; in that situation, the settlement-of-loss section of the insurance policy provides that State Farm must "pay to repair the damaged property or part, or replace the property or part."
State Farm contends that under that provision, it is only required to pay for the cost of the repairs, and that it is not required to pay its insured for any diminution in value that might occur even after *791 repairs are made to an automobile damaged in a collision. The applicable insurance policy provides that a basis for State Farm's liability for the cost of repairing a damaged automobile is the cost of "restor[ing] the vehicle to its pre-loss condition." Pritchett does not allege that his automobile was not physically repaired or restored to its pre-collision physical condition. Pritchett maintains that in order to "repair" his automobile under the applicable insurance policy, State Farm was required to restore the automobile to its pre-collision physical condition and value. Pritchett argues that the term "repair" is not defined in the applicable insurance policy and that that term is ambiguous; therefore, he argues, the insurance policy must be interpreted to compensate him for the alleged inherent diminished value of his automobile. See Sullivan v. State Farm Mut. Auto. Ins. Co., 513 So.2d 992 (Ala.1987) (any ambiguities in an insurance policy must be construed in favor of the insured).
The determination whether an insurance policy is ambiguous is a question of law. State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293 (Ala.1999). In determining whether a term or provision of an insurance policy is ambiguous, the court must construe the policy as a whole. Liggans R.V. Ctr. v. John Deere Ins. Co., 575 So.2d 567 (Ala.1991). An insurance policy is not ambiguous merely because the parties have assigned different meanings to its provisions. Canal Ins. Co. v. Old Republic Ins. Co., 718 So.2d 8 (Ala.1998); Watkins v. United States Fid. & Guar. Co., supra. We note that where an insurance policy is clear and unambiguous, courts may not rewrite the policy to provide coverage that was not intended by the parties. Canal Ins. Co. v. Old Republic Ins. Co., supra.
"[I]nsurance contracts, like other contracts, are construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 224 (Ala.2001) (citations omitted, emphasis omitted). In interpreting the language of an insurance policy, the courts must give the words used in the policy "their customary and normal meaning," and the court must construe the policy in a manner consistent with the interpretation that an ordinary person would place on the policy's language. Sullivan v. State Farm Auto. Ins. Co., 513 So.2d at 994.
Black's Law Dictionary 1298 (6th ed.1990) defines the term "repair" as meaning "to mend, remedy, restore, renovate. To restore to a sound or good state after decay, injury, dilapidation, or partial destruction." "Repair" has been defined as "to restore by replacing a part or putting together what is torn or broken: Fix." Merriam-Webster's Collegiate Dictionary (10th ed.1999). "In the common usage, the word `repair' means to fix by replacing or putting together what is broken, or, as the court in Carlton v. Trinity Universal Ins. Co., [32 S.W.3d 454 (Tex.Ct.App.2000)], stated, `to bring back to good or useable condition.'" O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 290 (Del.2001). The various definitions of repair do not discuss the concept of value. We do not believe that in its common usage, the term "repair" is understood to encompass the concept of value or require a restoration of value. "[A] return to market value is not what the words `repair' and `with like kind and quality' commonly connote and is not what an ordinary insured would reasonably understand the phrase to mean." *792 Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355 (Fla.Ct.App.2001).
Further, the policy provides that State Farm's liability for repairing a damaged automobile is the cost to "restore the vehicle to its pre-loss condition"; the policy does not provide for a restoration of value. In other sections of the insurance policy at issue in this appeal, the word "value" is used to define the insurance coverage provided under that portion of the policy. Therefore, it is clear that State Farm was aware of the concept of value and had used that term to define the limits of other areas of coverage it provided under the insurance policy.
Also, the insurance policy at issue in this appeal provides State Farm with the option of paying the actual cash value of the damaged automobile or repairing or replacing its parts. The interpretation of that provision advanced by Pritchett would negate the choice State Farm has under that provision and would require State Farm to pay the actual cash value of the damaged automobile in every case.
After reviewing the insurance policy as a whole, we find no uncertainty in the language or terms of the insurance policy, and we agree with the trial court that when viewed as a whole, the language of the insurance policy is unambiguous. See Celtic Life Ins. Co. v. McLendon, supra; Southern Sash of Columbia v. United States Fid. & Guar. Co., 525 So.2d 1388 (Ala.1988). See also State Farm Fire & Cas. Co. v. Slade, 747 So.2d at 309 ("a court cannot consider the language in the policy in isolation, but must consider the policy as a whole"). The insurance policy at issue provides that State Farm may elect to repair the damaged automobile; it does not impose any liability upon State Farm to pay an amount beyond the cost of those repairs in order to restore the value of the automobile.
A number of other jurisdictions have considered language in insurance policies similar to that at issue in this appeal in determining whether an insured may recover from its insured an amount representing the diminished value of an automobile after the automobile has been wrecked and repaired. There is a split in authority among the various jurisdictions regarding the resolution of that issue.
In O'Brien v. Progressive Northern Insurance Co., 785 A.2d 281 (Del.2001), the court discussed whether diminished value was recoverable under comprehensive and collision policies that contained language similar to that at issue in this appeal. The court concluded that an insurer that elected to repair a damaged automobile under one of the policies at issue in that case was required to restore the damaged automobile to "substantially the same" physical condition, but not value, that it was in before the damage occurred. 785 A.2d at 287. The court concluded that the plain and unambiguous language of the policies at issue did not require the insurers to indemnify their insureds for any diminished value to the repaired automobiles. 785 A.2d at 290. See also Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355, 357 (Fla.Ct.App.2001) (the insurer was not required to compensate its insured for any inherent diminution in value, but was required to restore the damaged automobile to its pre-collision "level of performance, appearance, and function"); Townsend v. State Farm Mut. Auto. Ins. Co., 793 So.2d 473, 480 (La.Ct.App.2001) (the insurer's liability was limited to the cost of restoring the damaged automobile "to substantially the same physical condition as before the accident," and the insurer was not required to pay for any reduction in the value of the automobile).
In Bickel v. Nationwide Mutual Insurance Co., 206 Va. 419, 143 S.E.2d 903 *793 (1965), the plaintiffs sought to recover the difference in the value of their automobile before and after the collision that caused damage to the automobile. At a trial before a jury, the insurer moved for a judgment as a matter of law, arguing that its liability under the terms of the policy was limited to the cost of repairs, storage, and towing. The trial court entered a judgment as a matter of law in favor of the insurer. The Supreme Court of Virginia affirmed, holding that the insurer's liability was limited to the cost of repairing or replacing the damaged property. 206 Va. at 423, 143 S.E.2d at 905. In so holding, the court stated:
"[A] plaintiff's measure of damages is not the difference in the market value of the automobile immediately before and after the collision. The contract of insurance does not so provide. To apply such measure of damages would be arbitrarily reading out of the policy the right of the [insurer] to make repairs or replace the damaged part with materials of like kind and quality."
Bickel v. Nationwide Mut. Ins. Co., 206 Va. at 423, 143 S.E.2d at 906.
Other cases interpreting policy language similar to that at issue in this case as excluding an insurer's liability for diminished value include: Johnson v. State Farm Auto. Ins. Co., 157 Ariz. 1, 754 P.2d 330 (1988) (unambiguous policy language limited the insurer's liability to the cost of repairs, less any deductible payable by the insured; any difference in value was not a proper measure of damages); Ray v. Farmers Ins. Exch., 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988) (the policy language unambiguously required the insurer to restore the automobile to its pre-collision condition, but not to its pre-collision value); Haussler v. Indemnity Co. of America, 227 Ill.App. 504 (1923) (the policy language limited the insurer's liability to the lesser of the actual cash value of the automobile or the cost or repairing or replacing the damaged property); General Accident Fire & Life Assurance Corp. v. Judd, 400 S.W.2d 685 (Ky.1966) (the insurer was required to restore the physical condition, but not the value, of the damaged automobile); and Camden v. State Farm Mut. Auto. Ins. Co., 66 S.W.3d 78 (Mo.App.2001) (the insurer's obligation under the unambiguous policy language is fulfilled if it adequately repairs the damaged automobile; any inherent diminution in value is not recoverable).
Some jurisdictions have construed policy language similar to that at issue in this case to be ambiguous and have held that, because an ambiguous insurance policy must be construed in favor of coverage for the insured, the insurer must compensate the insured for any diminished value of the insured's repaired automobile. See Hyden v. Farmers Ins. Exch., 20 P.3d 1222 (Colo. Ct.App.2000) (the court held the phrase "of like kind and quality" to be ambiguous, and it required the insurer to return the automobile to substantially the same function and value it had before the collision); Delledonne v. State Farm Mut. Auto. Ins. Co., 621 A.2d 350 (Del.Super.Ct.1992) (holding similar policy language to be ambiguous in a case involving flood damage), overruled by O'Brien v. Progressive N. Ins. Co., supra; Cazabat v. Metropolitan Prop. & Cas. Ins. Co., (No. CAKC99-0544, April 24, 2000) (R.I.Super.2000) (unpublished). In Cazabat, the Superior Court of Rhode Island[5] considered two actions, one under Louisiana law and the other under Rhode Island law, by insureds who sought to recover from their insurer on various claims, including claims related to the diminished *794 value of their wrecked automobiles. The court found that under both Louisiana and Rhode Island law, the phrase "the cost of repair or replace the property with other of like kind and quality," was ambiguous with regard to whether that provision included damages for the "inherent diminished value" of an automobile that has been repaired after a collision. Cazabat. The court concluded that because there was an ambiguity in the insurance policy, and because any ambiguity in an insurance policy must be construed in favor of the insured, a question of fact existed regarding the measure of damages the insureds could recover. Id.
Any precedential value of the Rhode Island Superior Court's judgment in Cazabat is limited to its interpretation of Rhode Island law. Also, we note that shortly after the Rhode Island Superior Court reached its judgment in Cazabat, supra, the Louisiana Court of Appeal released its decision in Townsend v. State Farm Mutual Automobile Insurance Co., 793 So.2d 473 (La.Ct.App.2001). In that case, the Louisiana court held that language similar to that at issue in Cazabat was unambiguous and did not impose on the insurer liability to pay its insured for diminished value. Townsend v. State Farm Mut. Auto. Ins. Co., 793 So.2d at 480.
The policy language at issue in this appeal requires State Farm to pay the cost to "repair the damaged property or part, or replace the property or part" where the damaged automobile can be repaired. We do not agree with the foregoing caselaw that concluded that such a provision is ambiguous. We conclude that "[a]scribing to the phrase `repair or replace' an obligation to compensate the insured for things that cannot reasonably be repaired or replaced violates the most fundamental rule of contract construction." O'Brien v. Progressive N. Ins. Co., 785 A.2d at 290-91.
Other jurisdictions have, without finding an ambiguity in the policy language, concluded that policy language similar to that at issue in this case requires an insurer to compensate its insured for any diminished value that results even though a damaged automobile has been repaired: Arch Roberts & Co. v. Auto-Owners Ins. Co., 305 So.2d 882 (Fla.Ct.App.1974) (affirming the trial court's judgment requiring the insurer to return the damaged automobile to its pre-collision condition and value), but see Siegle v. Progressive Consumers Ins. Co., 788 So.2d at 359 (distinguishing Arch Roberts by stating that the court in that case was not required to decide the issue regarding diminished value); State Farm Mut. Auto. Ins. Co. v. Mabry, 274 Ga. 498, 556 S.E.2d 114 (2001) (Georgia caselaw establishes that the difference in value is the proper measure of damages); Venable v. Import Volkswagen, Inc., 214 Kan. 43, 519 P.2d 667 (1974) (an insurer must return the damaged automobile to substantially the same condition and value as before the collision; if, despite repairs, the automobile suffers a diminution in value, the proper measure of damages is the difference in the value of the automobile before and after the collision); Potomac Ins. Co. v. Wilkinson, 213 Miss. 520, 57 So.2d 158 (1952) (any diminished value that occurs in spite of repairs is to be added to the cost of the repairs for which the insurer is liable); National Farmers Union Prop. & Cas. Co., 298 P.2d 762 (Okla.1956) (the measure of recovery is the difference in the value of the automobile before and after the collision that caused the damage); Pierce v. American Fid. Fire Ins. Co., 240 N.C. 567, 83 S.E.2d 493 (1954) (the difference in market value was proper method of damages); Rossier v. Union Auto. Ins. Co., 134 Or. 211, 291 P. 498 (1930) (there is no full restoration of *795 the property where there is a diminution in the value of the property); Campbell v. Calvert Fire Ins. Co., 234 S.C. 583, 109 S.E.2d 572 (1959) (the purpose of the insurance policy was to pay the insured in full for any loss or damage; therefore, the proper measure of damages was the difference in the value of the automobile before and after the collision); Senter v. Tennessee Farmers Mut. Ins. Co., 702 S.W.2d 175 (Tenn.Ct.App.1985) (if repairs restore the function and appearance of the damaged automobile but not its fair market value, the insured may recover the diminished value).
There are no facts or arguments before this court related to the issue of diminished value of an automobile as a result of any event other than a collision. Therefore, in our analysis of the issue presented in this appeal, we have confined our discussion to that relevant to property damage caused by a collision, and we have not considered as persuasive authority in our decision the caselaw from other jurisdictions that discusses diminished value with regard to damage caused by any event other than a collision.[6] Rather, we limit this holding to those cases involving a claim for diminished value where the damage to an automobile involved in a collision has been repaired.
After considering the arguments of the parties, the applicable insurance policy language, relevant Alabama caselaw, and the authority from other jurisdictions, we conclude that the provisions of the insurance policy at issue in this appeal do not require State Farm to restore an insured's collision-damaged automobile to its pre-collision value. We agree with the trial court that the most appropriate interpretation of the "repair the damaged property or part, or replace the property or part" provision requires that State Farm return the damaged automobile to substantially the same physical and operating condition as it occupied before the collision that caused the damage but that, under the unambiguous language of the insurance policy, State Farm is not required to restore the automobile's value. In other words, under the "repair or replace" language of the insurance policy, State Farm is not required to compensate its insured for any possible difference between the value of the insured automobile before the collision and the value of that automobile after the damage caused by the collision has been repaired. We affirm the trial court's summary judgment in favor of State Farm.
AFFIRMED.
CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.
YATES, P.J., concurs in part and dissents in part.
MURDOCK, Judge, concurring specially.
I concur in Judge Thompson's well-reasoned opinion. I write separately to focus on certain provisions in the applicable "Limit of Liability" section of the policy that in my view are particularly probative *796 as to the issue before this court. That section begins by stating:
"The limit of our [the insurer's] liability for loss to property or any part of it is the lower of:
"1. the actual cash value; or
"2. the cost of repair or replacement."
The policy thereafter explains the phrase "the cost of repair or replacement":
"The cost of repair or replacement is based upon one of the following:
"1. the cost of repair agreed upon by you and us;
"2. A competitive bid approved by us; or
"3. An estimate written based upon the prevailing competitive price. The prevailing competitive price means prices actually charged by a majority of the repair market in the area where the car is to be repaired as determined by a survey made by us. If you ask, we will identify some facilities that will perform the repairs at the prevailing competitive price. We will include in the estimate parts sufficient to restore the vehicle to its pre-loss condition. You agree with us that such parts may include either parts furnished by the vehicle's manufacturer or parts from other sources including non-original equipment manufacturers."
(Emphasis in original.)
The foregoing language is simple and direct. It plainly makes the "cost of repair" a function of just that, the actual cost of repair, without any reference to diminished value. Automobile repair shops provide "competitive bids" to make physical repairs, not to set hypothetical diminished values; "prices charged by a majority" of the actual "facilities that will perform the repairs" are a measure of actual repair costs, not of post-repair diminution in value.
As Judge Thompson notes, the interpretation of insurance contracts, like other contracts, turns on the intention of the parties. A term should not be read in isolation, but in the context of all other pertinent policy provisions. Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 224 (Ala.2001). A court must give policy provisions their "customary and normal meaning" and construe them "in light of the interpretation that ordinary persons would place on the language used." Sullivan v. State Farm Mut. Auto. Ins. Co., 513 So.2d 992, 994 (Ala.1987). In my view, the trial court correctly applied these principles in a straightforward manner to the term "repair" and the above-quoted policy provisions when it wrote as follows at the outset of its judgment:
"[T]he Policy endorsement unambiguously limits State Farm's liability for `loss' under the collision and comprehensive coverages to the lower of actual cash value or the cost of repair or replacement. The cost of repair or replacement is limited to one of the three methods: either agreement between the parties, competitive bids, or the prevailing competitive price. The prevailing competitive price is defined in the Policy endorsement to mean `the prices charged by the majority of the repair market in the area where the car is to be repaired.' (Emphasis added.) Thus, the prevailing competitive pricethe amount State Farm obligates itself to payis not set by the market value of the vehicle, but rather, by what the majority of auto repair shops in the area charge for the physical repair of the vehicle. Under the plain and unambiguous terms of the Policy, State Farm has *797 no obligation to pay the plaintiff for alleged diminished value."
(Emphasis in original.)
YATES, Presiding Judge, concurring in part and dissenting in part.
The trial court entered a summary judgment in favor of State Farm, holding that the language of the policy was unambiguous and that the policy did not cover diminished value.[7] The court concluded that Alabama law prohibited Pritchett from recovering diminished value. The court also determined that recent cases from other jurisdictions support the summary judgment in favor of State Farm.
Diminished value or diminution in value has been recognized in Alabama as a measure of property damage when the action is brought by a third party. That is, in a third-party tort claim against a defendant, Alabama has recognized diminished value as recoverable. Coffee County Comm'n v. Smith, 480 So.2d 1194 (Ala.1985)(tractor owner was entitled to damages equal to difference between the market value of the tractor before and after the collision, plus valuation of use of tractor during period of repair, rather than damages equal only to cost of the repairs, in lawsuit against the county for property damage sustained while tractor was crossing a bridge and where repairs did not substantially restore tractor to its former condition); Robbins v. Voigt, 280 Ala. 207, 191 So.2d 212 (1966)(in an action for recovery for damage to plaintiff's car arising from a collision with defendant's car caused by defendant's negligence, plaintiff is entitled to recover depreciation in car's market value caused by the collision); Hunt v. Ward, 262 Ala. 379, 79 So.2d 20 (1955)(owner of truck damaged by plaintiff's car was entitled to the amount of the depreciation in value for the damaged truck); Birmingham R.L. & P. Co. v. Sprague, 196 Ala. 148, 72 So. 96 (1916)(testimony indicated that repair to automobile damaged by a streetcar did not restore the automobile to its former condition and, therefore, the trial court did not err in refusing to charge the jury that only damages for repair could be recovered); Thompson v. Pollock Dry Goods Co., 18 Ala.App. 326, 92 So. 22 (1921)(judgment of trial court was reversed where defendant admitted he struck plaintiff's new car but trial court limited damages and would not allow damages for market value). However, the present case involves a first-party contract claim against an insurer for diminished value.
Pritchett argues that whether diminished value is covered under car insurance policies involving a first party is an issue of first impression in Alabama. He also argues that a majority of other jurisdictions addressing this issue have held that diminished value is a covered loss under an insurance contract. He cites cases from the following jurisdictions in support of his position that insurance policies do include coverage for diminished value: Arkansas, Colorado, Delaware, Florida, Georgia, Kansas, Minnesota, Mississippi, Montana, New York, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, and Texas. *798 State Farm argues that courts in Alabama have addressed this issue and have held that diminished value is not a covered loss in a first-party action. In the alternative, State Farm cites cases from the following jurisdictions in support of its position that insurance polices do not include diminished value as recoverable property damage: Arizona, California, Delaware, Florida, Kentucky, Illinois, Louisiana, Massachusetts, Pennsylvania, Tennessee, Texas, and Virginia. State Farm further argues that many of the cases cited by Pritchett are distinguishable, and that the minority view is the more recent trend and the better position.
I will first address whether the issue of diminished value in a first-party action has ever been squarely before the courts of Alabama. In Home Insurance Co. of New York v. Tumlin, 241 Ala. 356, 2 So.2d 435 (1941), the plaintiff sued his insurance company to recover for damage to a car covered under his collision policy. The jury rendered a verdict in the plaintiff's favor. On appeal, the insurance company argued that the credit company financing the plaintiff's car had the exclusive right to bring an action under the insurance policy and that any other interested party must show that the amount due the credit company on the loan to finance the car has been satisfied. The supreme court reversed and remanded, holding that the trial court erred in not charging the jury that the plaintiff had to prove that he no longer owed the credit company and that he was, therefore, entitled to the entire amount under the policy. The Tumlin court stated:
"And it is held that where a policy of insurance provides that the insurer's liability for loss or damage to the property insured shall not exceed `what it would cost to repair or replace the automobile or parts thereof with others of like kind and quality' the insured is entitled to recover only the cost of such repairs or replacements. Such a provision will be construed as a limitation of the insurer's liability and the test or measure of damages which insured is entitled to recover. Spivy-Johnson Portrait Co. v. Belt Automobile Indemnity Ass'n., 210 Ala. 681, 99 So. 80 [(1924)]."
241 Ala. at 359, 2 So.2d at 437.
In Spivy-Johnson Portrait Co. v. Belt Automobile Indemnity Ass'n, 210 Ala. 681, 99 So. 80 (1924), the plaintiff sued his insurance company, alleging breach of contract and conversion. The jury found in favor of the plaintiff. The trial court granted the insurance company's motion for a new trial on the ground that the verdict was excessive. The policy provided that the insurer "shall not be liable beyond the cash value of the property destroyed or damaged as of the time of the destruction, loss, or damage." 210 Ala. at 682, 99 So. at 81. After a fire had damaged the car, the insurance company's agent, who also had a mortgage on the car, stored the car. The car was not repaired, nor was it returned to the plaintiff. The supreme court affirmed the trial court's order granting a new trial, holding that the plaintiff could opt to sue for conversion or a breach of contract if the adjuster had ordered the agent to store the car. Under those facts, the court held that the plaintiff's damages would be the cash value of the car immediately before the fire, less any damage caused by the removal of parts between the date of the fire and the date of the conversion. That is, the insurer would lose the right to insist on paying only the cost of repairs because of the conversion. However, if the adjuster merely advised the agent, as mortgagee of the car, to store it, then the plaintiff could recover only the value of the car immediately before the fire, less its salvage value after the fire, or, if the car was rebuilt with *799 parts of like kind and quality, the cost of such repairs.
William Penn Fire Insurance Co. v. Tippett, 35 Ala.App. 103, 44 So.2d 23 (1950), involved a jury charge regarding the amount of damages to which the insured was entitled. There was a factual issue whether the wrecked car was repairable. The insurer asked that the jury be charged that if they were satisfied that the car was repairable, then "the amount of your verdict should represent the reasonable cost of repairs plus other damages properly proved by the plaintiff." 35 Ala. App. at 105, 44 So.2d at 24. The trial court refused this charge and, instead, gave an erroneous charge. After the jury returned its verdict, the trial court belatedly decided to give it explanatory instructions. This court reversed the trial court, stating:
"The trial judge confessed to the jury that he had not read the applicable provisions in the policy. The jury was composed of laymen. The court should have instructed them explicitly, definitely, and plainly concerning the manner of arriving at the amount of damages under the terms of the policy. This duty was imposed more heavily because of the prior erroneous instructions, upon the basis of which the jury had proceeded in their deliberations even to the point of arriving at a decision."
35 Ala.App. at 107, 44 So.2d at 26.
State Farm Mutual Automobile Insurance Co. v. Dodd, 276 Ala. 410, 162 So.2d 621 (1964), involved an allegation of negligent repair of a car. State Farm undertook to repair the car after a collision. The plaintiff claimed that the repairs were negligently made, and as a proximate consequence of that negligence, the car in which the plaintiff's son was riding collided with an abutment, killing his son. State Farm argued, among other things, that there was no evidence from which a jury could find that it had a duty to repair the car in question. The policy contained the provision that "the company may pay for the loss in money or may repair or replace the automobile...." 276 Ala. at 416, 162 So.2d at 626. The court held that the policy gave State Farm the option of either paying for the loss or repairing the car and, therefore, that there was evidence that State Farm had a duty to repair the car.
In Langford v. Federated Guaranty Mutual Insurance Co., 543 So.2d 675 (Ala. 1989), the insurance company had agreed to settle its insured's claim on the basis of a total loss, meaning that the company would pay the actual cash value of the car before the collision, less the amount of the deductible. The issue was whether the insured was required to surrender the car to the insurer or if he could retain the car for salvage after it had been declared a total loss and still receive the actual cash value. The supreme court held:
"Whatever salvage value the car has is not a `loss.' The insurance company agreed to treat the situation as if there had been a `total loss' and to pay that `loss in money' if the insured transferred title to the salvage, or to pay for the actual `loss,' i.e., the actual pre-damage cash value minus salvage value."
Id. at 678.
Based on the foregoing cases, I agree with the majority that the issue of diminished value in a first-party action has never been squarely before the Alabama courts. Tumlin addressed the rights of an insured to sue its insurer in the absence of the lienholder. Although the Tumlin court discussed the "repair or replace" language in the policy, there was no discussion of whether post-repair diminished value was a covered loss. Spivy-Johnson held that if a vehicle was a total loss, then the maximum amount of recovery was the actual cash value, but that if it was a *800 partial loss and repairs were made, then only the cost of the repairs was recoverable. The issue of diminished value was not addressed in Spivy-Johnson. Tippett had as a factual question whether the car was indeed repairable, and if it was, then the plaintiff was entitled to the cost of repairs "plus other damages proven." Dodd concerned the substandard or negligent repair of a car. In the present case, the adequacy of the repair is not at issue. Langford involved the "total loss" of the car and whether the plaintiff was entitled to salvage value in addition to the actual cash value.
In addressing this issue of first impression in Alabama, I note that under Alabama law, if an insurance policy is unambiguous, then a court must enforce the policy as it is written and cannot defeat the express provisions of the policy. Auto-Owners Ins. Co. v. American Cent. Ins. Co., 739 So.2d 1078, 1081 (Ala.1999). Whether a clause in an insurance policy is ambiguous is a question of law to be decided by the trial court. Hutchinson v. Attorneys Ins. Mut. of Alabama, Inc., 631 So.2d 975 (Ala.1994); First Mercury Syndicate, Inc. v. Franklin County, 623 So.2d 1075 (Ala.1993).
"It is well settled in Alabama that when a contract is interpreting the language in an insurance contract, rules of construction mandate that words are to be given their customary and normal meaning. This Court has also stated that provisions of insurance policies must be construed in light of the interpretation that ordinary persons would place on the language used. McKissick v. Auto-Owners Ins. Co., 429 So.2d 1030 (Ala.1983). Any ambiguities in an insurance policy are to be resolved in favor of coverage. Childress v. Foremost Ins. Co., 411 So.2d 124 (Ala.1982)."
Sullivan v. State Farm Mut. Auto. Ins. Co., 513 So.2d 992, 994 (Ala.1987).
Courts may not rewrite the terms of an insurance policy or interpret unambiguous policy language so as to provide coverage that was not intended by the parties. Canal Ins. Co. v. Old Republic Ins. Co., 718 So.2d 8 (Ala.1998). "`Language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time.'" Zitterow v. Nationwide Mut. Ins. Co., 669 So.2d 109, 112 (Ala.1995), quoting American Reliance Ins. Co. v. Mitchell, 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989).
"An insurance policy must be read as a whole. The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in context with all other provisions. Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C., 703 So.2d 866, 870 (Ala.1996); Hall v. American Indemnity Group, 648 So.2d 556 (Ala. 1994)."
Allstate Ins. Co. v. Hardnett, 763 So.2d 963, 965 (Ala.2000).
I recognize that there is a split of authority in other jurisdictions as to whether "repair or replace" property with "like kind and quality" includes diminished value. Both Pritchett and State Farm have discussed cases in support of their respective positions.
In MFA Insurance Co. v. Citizens National Bank of Hope, 260 Ark. 849, 545 S.W.2d 70 (1977), the Supreme Court of Arkansas held that if repairs to a fire-damaged car with parts of like kind and quality would not restore the car to its former market value, then the proper measure of damage was the difference in the market value before and after the fire and repairs. The plaintiff presented expert testimony that even with the repairs, the vehicle would not have the same market value as it did before the fire. The court stated:

*801 "Appellant argues that its liability is limited to the cost of repairing the automobile. Appellant relies upon Unigard Insurance Co. v. Wish, 254 Ark. 832, 496 S.W.2d 392 (1973), and Tri-State Ins. v. McCraw, 252 Ark. 1259, 483 S.W.2d 212 (1972), as typical cases in support of its argument. It is true that these cases hold that a limitation of liability as to property damage in an insurance contract is valid. The appellee acknowledges the validity of these provisions. However, it cites our cases as holding that the measure of damages is the difference in the market value of the vehicle immediately before and after the alleged damages. Home Insurance Co. v. Springdale Motor Co., 200 Ark. 893, 141 S.W.2d 522 (1940); The Home Insurance Company of New York v. Williams, 201 Ark. 460, 145 S.W.2d 743 (1940); Service Fire Ins. Co. v. Horn, 202 Ark. 300, 150 S.W.2d 53 (1941); Motors Insurance Corp. v. Lopez, 217 Ark. 203, 229 S.W.2d 228 (1950); Southern Farm Bureau Cas. Ins. Co. v. Gaither, 238 Ark. 50, 378 S.W.2d 211 (1964); and Insured Lloyds v. Mayo, 244 Ark. 802, 427 S.W.2d 164 (1968). Suffice it to say that we do not deem Unigard and Tri-State controlling here. In these cases the issue was not presented, as here, whether the repairs to a fire damaged vehicle with parts of like kind and quality would restore the car to its former condition.
"Here the appellee adduced evidence that the cost of repairs with parts of other like kind and quality would not restore the vehicle to its former market value. Therefore, a fact question existed as to the proper measure of damages."
260 Ark. at 850-51, 545 S.W.2d at 71.
Courts in Arizona and California have held that the collision insurance policy did not cover diminution in market value in addition to paying for repairs to the vehicle. Johnson v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 1, 754 P.2d 330 (1988); Ray v. Farmers Ins. Exchange, 200 Cal. App.3d 1411, 246 Cal.Rptr. 593 (1988).
A Colorado appeals court has held that the insurance company's obligation, under the terms of its policy, to provide a repaired car "of like kind and quality" required that it provide a car substantially equivalent in both function and value to the car that the insured drove before the accident. Hyden v. Farmers Ins. Exchange, 20 P.3d 1222 (Colo.Ct.App.2000). The court stated:
"Initially, we note that, during oral argument, [the insurance company] explained that the `of like kind and quality' phrase obliged it only to return the Jeep to the plaintiff in `substantially the same condition as it was before the accident.' Yet, according to one leading commentator, `A vehicle is not restored to substantially the same condition if repairs leave the market value of the vehicle substantially less than the value of the vehicle immediately before the collision.' L. Russ, Couch on Insurance 3D § 175:47 at 175-54 (1998). We agree with this commentator.
"The phrase `of like kind and quality' does not, in our view, unambiguously support [the insurer]'s position that it was obligated only to restore plaintiff's Jeep to a functioning capacity. Indeed, the term `quality' can have a meaning different from the word `kind,' Webster's Ninth New Collegiate Dictionary 661 & 963 (1991), and it often conveys `a degree of excellence' or `a superiority in kind.' Webster's Ninth New Collegiate Dictionary 963 (1991). Because the words `kind' and `quality' are joined together *802 by `and' rather than by `or,' ordinary purchasers of insurance could reasonably expect [the insurer] to provide them with vehicles substantially equivalent in both function and value to those which they drove prior to any accidents."
20 P.3d at 1225.
In Delledonne v. State Farm Mutual Automobile Insurance Co., 621 A.2d 350 (Del.Super.Ct.1992), the plaintiff's car had been damaged by a flood. The repair work included new carpeting, new car speakers, and a new engine computer, paid for by the plaintiff's insurance company. On the basis of appraisals of the loss of value to her car even after the repairs, the plaintiff sued her insurance company seeking to recover for diminished value. The insurance company moved for a summary judgment, arguing that its liability was limited to repair or replacement costs alone. The court held that the insurance company was not entitled to a summary judgment, because the insurer's provision to "repair or replace" a vehicle or its parts with "like kind and quality" required the insurer to pay for diminution of value. We note that the plaintiff presented expert testimony in the form of appraisals that her car was diminished even after the repairs were made.
Another Delaware lower court in O'Brien v. Progressive Northern Insurance Co., (Ms. 99C-05-033-FSS, December 18, 2000) (Del.Super.Ct.2000)(unpublished), distinguished Delledonne from the case before it. In O'Brien, the plaintiffs' car had been stolen and damaged. The plaintiffs' insurer paid for the repairs, but refused to pay for the additional claim for diminished value. The court dismissed the plaintiffs' case. It distinguished Delledonne, stating:
"It cannot reasonably be believed that the `repair' of a vehicle which has been flood-damaged with `like kind and quality' is complete upon making basic physical repairs. It is well-known in the insurance industry that automobiles suffer great loss in value as a direct result of their status as flood-damaged vehicles.
". . . .
"... [I]n the context of a collision or other typical damage, what constitutes repair is clear. It is the best a repair shop can do. If the vehicle cannot be repaired, then it must be replaced or the carrier must pay cash under the policy's terms. But the carrier is not contractually bound to repair a collision-damaged vehicle as best as possible and then pay money to cover what cannot be repaired."
Id. at 4.
The Supreme Court of Delaware affirmed the decision of the superior court in O'Brien v. Progressive Northern Insurance Co., 785 A.2d 281 (Del.2001). The supreme court noted:
"[T]he facts of the Delledonne case strongly suggest that the severity of the flood damage in that instance made it impossible for repairs to restore the car to substantially the same condition as before the damage. If this was the case, the Superior Court should have determined whether the standards of repair as provided by the contract were met or could be met, not that the term repair required a full restoration of value."
785 A.2d at 287 n. 11. The court held that a mere split of authority from other jurisdictions in the interpretation of similar language does not create an ambiguity and that the Delledonne court incorrectly stated Delaware law by finding that the existence of two separate lines of authority was evidence of an ambiguity. 785 A.2d at 289. The Delaware Supreme Court further held that the policy language providing *803 the insurer with the option either of reimbursing the claimant for the entire value of the damaged automobile or of repairing or replacing it parts, would be rendered meaningless if the insurer were required in every case to reimburse the claimant for the full value of the car in question.
There is a split of authority in Florida courts as to whether diminished value is covered. Auto-Owners Insurance Co. v. Green, 220 So.2d 29 (Fla.Dist.Ct.App. 1969), and Arch Roberts & Co. v. Auto-Owners Insurance Co., 305 So.2d 882 (Fla. Dist.Ct.App.1974), are cited for the proposition that "repair" means an insurer is obligated to restore a collision-damaged vehicle to its pre-accident function, appearance, and value. Two recent cases have held that the insurer's responsibility to "repair" a vehicle is limited to competently and properly performed repairs, but does not include compensation by virtue of the fact that the vehicle was involved in a collision. Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355 (Fla.Dist.Ct.App. 2001); Rezevskis v. Aries Ins. Co., 784 So.2d 472 (Fla.Dist.Ct.App.2001). The Florida Supreme Court has not addressed the issue, although, according to Pritchett's brief, review by that court is pending in Siegle and Rezevskis.[8]
The Georgia Supreme Court in Dependable Insurance Co. v. Gibbs, 218 Ga. 305, 315, 127 S.E.2d 454, 461 (1962), held that "the primary obligation of the insurer was to pay for the loss caused by collision and that the correct measure of that loss would be the difference in the market value of the automobile immediately before the collision and the combined amount of its market value immediately after being repaired, plus the $100 deductible," where the insurer opted to make repairs and did so defectively. In United States Fire Insurance Co. v. Welch, 163 Ga.App. 480, 294 S.E.2d 713 (1982), that appeals court held that the defendant insurance company had the option to pay for the loss in money, to repair the vehicle, or to replace it with other property of like kind and quality, but the contract required that no matter which alternative is chosen, the market value of the property plus the deductible must equal the market value before the loss. In Hartford Fire Insurance Co. v. Rowland, 181 Ga.App. 213, 215, 351 S.E.2d 650, 652 (1986), the court interpreted the policy language "cost of repairing the damaged or stolen property with other of like kind or quality" to mean "restoration of the vehicle to substantially the same condition and value as existed before the damage occurred."
In State Farm Mutual Automobile Insurance Co. v. Mabry, 274 Ga. 498, 556 S.E.2d 114 (2001), policyholders sued State Farm seeking recovery for diminution in value of a properly repaired vehicle in first-party physical damage claims. The Georgia Supreme Court accepted the trial court's finding that there is a potential for diminished value in every event of loss, and that diminution in value occurs even when physical damage to an automobile is properly repaired, based on documents produced by State Farm. Those documents acknowledged that there is a common perception that a wrecked vehicle is worth less simply because it has been wrecked. The supreme court then addressed whether State Farm was required to pay for diminution in value as a part of its physical-damage coverage under its policy. The court stated:

*804 "Georgia caselaw establishes clearly that value, not condition, is the baseline for the measure of damages in a claim under an automobile insurance policy in which the insurer undertakes to pay for the insured's loss from a covered event, and that a limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value.
". . . .
"Having reviewed both Georgia law and that of other jurisdictions, we adhere to the long-standing contract interpretation set forth in the Georgia decisions discussed above.[9] The rationale of those cases remains solid: the insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for the insured's loss. Magnetic Resonance Plus [v. Imaging Systems Int'l., 273 Ga. 525, 543 S.E.2d 32 (2001)]. Thus, our holding in this case that State Farm is obligated to pay for diminution in value when it occurs is based on reason, precedent, and the intent of the parties. Recognition of diminution in value as an element of loss to be recovered on the same basis as other elements of loss merely reflects economic reality."
274 Ga. at 506-508, 556 S.E.2d at 121-122.
In 1923, the Illinois Appeals Court in Haussler v. Indemnity Co. of America, 227 Ill.App. 504 (1923), held erroneous the jury instruction measuring damages as the difference between the fair cash value of the automobile immediately before the collision and the fair cash value of the automobile immediately after the collision. The damages under the policy should have been the cost of the suitable repair or replacement of the parts injured or destroyed. The plaintiff in Haussler did not seek damages for diminished value nor did the court specifically address the question of the diminished value of an automobile.
The Kansas Supreme Court has held that the insurer's promise to "repair or replace the [damaged property] with material of like kind and quality" included not only the cost of the repairs but also the diminution in value of the repaired vehicle. Venable v. Import Volkswagen, Inc., 214 Kan. 43, 47, 519 P.2d 667, 672 (1974).
In Kentucky, the supreme court has held that although a wrecked vehicle may never be fully restored to its pre-accident market value, where policy language does not require a restoration of value, the insured can recover only for restoration of physical condition. General Accident Fire & Life Assur. Corp. v. Judd, 400 S.W.2d 685 (Ky.1966).
Louisiana courts have recognized diminished value as an item of damage in third-party liability claims based on basic tort principles of putting the plaintiff in the position he would have occupied had the damage not occurred. See Orillac v. Solomon, *805 765 So.2d 1185 (La.App.Ct.2000); Smith v. Midland Risk Ins. Co., 699 So.2d 1192 (La.App.Ct.1997); Davies v. Automotive Cas. Ins. Co., 647 So.2d 419 (La.App. Ct.1994); Romco, Inc. v. Broussard, 528 So.2d 231 (La.App.Ct.1988); Giles Lafayette, Inc. v. State Farm Mut. Auto. Ins. Co., 467 So.2d 1309 (La.App.Ct.1985). However, in Townsend v. State Farm Mutual Automobile Insurance Co., 793 So.2d 473 (La.App.Ct.2001),[10] the court held that State Farm's obligation to indemnify the plaintiff when a first-party claim is submitted as the result of a collision is limited by the terms of the contract and not by tort principles. The court stated:
"Bootstrapping the standards for measuring damages when property is damaged through the fault of another to the contractual coverage provided by an insurer for first-party collision claims would result in a new contract, one enlarged beyond what is reasonably contemplated by the clear terms set forth therein, and would ignore the principle that insurance companies may limit coverage so long as such limitations do not conflict with statutory provisions or public policy."
793 So.2d at 479-480.
A Massachusetts Superior Court addressed the issue whether an insurer is required to reimburse its insured for any loss of market value based on the perception that an automobile involved in accident is not worth as much as it was before the accident. Roth v. Amica Mut. Ins. Co., (No. 98-3551, Sept. 3, 1999)(Super. Ct. of Norfolk County, Mass.) (unpublished). The policy in Roth provided that "[i]n any event, we will never pay more than it would cost to repair or replace the damaged property." Id. at 2. The court held that the policy did not require the insurer to pay the repair costs plus diminution in market value.[11]
In Minnesota, the terms of an insurance policy required the insured to include depreciation not compensated for through repair or replacement. Ciresi v. Globe & Rutgers Fire Ins. Co., 187 Minn. 145, 244 N.W. 688 (1932). In Ciresi, the plaintiff's car was stolen when it was "almost new." When the car was recovered, it was damaged and had been driven an additional 10,000 miles.
In Potomac Insurance Co. v. Wilkinson, 213 Miss. 520, 529-30, 57 So.2d 158, 160 (1952), the Mississippi Supreme Court held that jury instructions based on a partial loss
"should submit as a basis of estimate the cost of all repairs necessary and adequate to restore its former function and efficiency. If such repairs can restore also its market value as of the date of damage, such is the measure of liability. If, despite such repairs, there yet remains a loss in actual market value, estimated as of the collision date, such deficiency is to be added to the cost of the repairs."
In Williams v. Farm Bureau Mutual Insurance Co. of Missouri, 299 S.W.2d 587 (Mo.Ct.App.1957), the plaintiff refused to take her automobile to be repaired at the repair shop chosen by her insurance *806 company, apparently because that shop's estimate was approximately one-half the estimate of two other shops. It was undisputed that the insurance company had the option of paying for repairs or declaring the car a total loss. The Missouri Appeals Court reversed the judgment based on the jury verdict in favor of the plaintiff, stating that if the insurance company
"permitted to undertake repairs, had fallen short of substantial restoration of function, appearance and value, plaintiff would not have been bereft of right or remedy but, upon proper showing, might have recovered damages in an amount equal to the difference between the reasonable market value of the insured automobile immediately prior to the upset and its reasonable market value when tendered to plaintiff after repairs."
Williams, 299 S.W.2d at 590.
In Camden v. State Farm Mutual Automobile Insurance Co., 66 S.W.3d 78 (Mo. App.2001), the insured sued her insurer to recover the inherent diminished value of a car that had been adequately repaired after an accident. The Missouri Appeals Court held that the policy unambiguously limited the insurer's liability for a covered loss to the lower of the cash value of the car or payment for the repairs. The court further held that the term "repair" did not inherently include the concept of value.
In Eby v. Foremost Insurance Co., 141 Mont. 62, 374 P.2d 857 (1962), the Montana Supreme Court held that the proper measure of damages for damage to the insured's mobile home resulting from a hail storm was the difference in market value before the storm and after the storm. Following Rossier v. Union Automobile Insurance Co., 134 Or. 211, 213, 291 P. 498, 500 (1930), the Montana court quoted Rossier: "`It cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair....'" 141 Mont. at 65, 374 P.2d at 858.
In Edwards v. Maryland Motorcar Insurance Co., 204 A.D. 174, 197 N.Y.S. 460 (1922), the plaintiff sued, claiming diminution in the value of her stolen car. The insurance policy provided that the insurer had the option to "repair, rebuild, or replace the property lost or damaged with other of like kind and quality." Id. at 175, 197 N.Y.S. at 460. The court found that the "diminution in value is damage embraced within the clause of the policy insuring plaintiff `against direct loss or damage' by the perils of `theft, robbery, or pilferage.'" Id. at 175, 197 N.Y.S. at 461. We note that the New York court found coverage in another provision of the insurance policy for diminished value, and not under any provision obligating the insurer to repair or replace with like kind and quality.
The Oklahoma Supreme Court held that "`unless the collision resulted in a total loss of the automobile plaintiff's measure of recovery was the difference between the fair market value of his automobile in the condition in which it was immediately prior to the collision, and its value thereafter.'" National Farmers Union Prop. & Cas. Co. v. Watson, 298 P.2d 762, 767 (Okla.1956), quoting Phoenix Ins. Co. v. Diffie, 270 P.2d 634, 637 (Okla.1954). In Watson, the insurer argued, among other things, that if the car had to be repaired then it was not obligated beyond the cost of the repair.
In Dunmire Motor Co. v. Oregon Mutual Fire Insurance Co., 166 Or. 690, 699, 114 P.2d 1005, 1009 (1941), the Oregon Supreme Court held that if the policy limits the insurer's liability to "what it would then cost to repair the automobile, or parts thereof, with other of like kind and quality," a complete restoration of the car cannot *807 be had until there has be a diminution in value after repair.
A Pennsylvania District Court dismissed a class action filed against an insurer for its failure to pay diminished value of automobiles following a collision. Munoz v. Allstate Ins. Co., XXXX-XXXX (Pa.Super.Ct., November 15, 1999). The policy provided that the insurer would pay "the cost to repair or replace the property or part with other of like kind and quality." Id. at 3. The Court stated that it was unaware of any circumstance in which an insurer had reimbursed the insured for diminished value and that such a payment would not be the norm.
In Cazabat v. Metropolitan Property & Casualty Insurance Co., (No. CAKC99-0544, April 24, 2000)(R.I.Super.2000)(unpublished), the Superior Court of Rhode Island recognized the split of authority among the states with regard to compensating an insured for diminished value.[12] The court denied the insurance company's motion for a summary judgment as to the issue of diminished value, because it found that an ambiguity existed in the contract as to whether the phrase "the cost of repair or replace the property with other of like kind and quality" included damages for the inherent diminished value of an automobile resulting from the vehicle being in an accident.
Interpreting policy language stating "cost to repair or replace the automobile or such part thereof with other of like kind and quality," the South Carolina Supreme Court in Campbell v. Calvert Fire Ins. Co., 234 S.C. 583, 109 S.E.2d 572, 575 (1959), discussed the proper measure of damages. The court stated that restoration of a car to its former condition may or may not be accomplished by repairs. The court further stated that if, despite such repairs, "there remains a loss in actual value, estimated as of the collision date, the insured is entitled to compensation for such deficiency." 109 S.E.2d at 577.
The South Dakota Supreme Court in Grubbs v. Foremost Insurance Co., 82 S.D. 98, 99, 141 N.W.2d 777, 778 (1966), held that the terms "repair" or "replacement" used in an insurance policy mean the restoration of the property to substantially the same condition in which it was immediately before the damage. In Grubbs, the plaintiff's mobile home trailer was damaged as a result of a hailstorm.
In Senter v. Tennessee Farmers Mutual Insurance Co., 702 S.W.2d 175 (Tenn.Ct. App.1985),[13] the court held that jury instructions regarding recovery of damages for an automobile after repairs from an accident should address the fact that the automobile's function, appearance, and value should be substantially restored. "If the repairs restore function and appearance but not fair market value, then the insured is entitled to recovery." Id. at 178.
*808 In Texas, one appeals court,[14] construing similar policy language to the policy in the present case, held that the insurance policy did not provide compensation for diminished value in first-party claims and affirmed a summary judgment in favor of the insurer. Carlton v. Trinity Universal Ins. Co., 32 S.W.3d 454 (Tex.App.2000). In Carlton, the plaintiff's car was stolen, but it was later recovered. As a result of the crime, the plaintiff's car sustained damage and had been driven an additional 3,500 miles. The insurer agreed to pay for the repairs; however, it refused to pay for diminished value as a result of the loss. The trial court entered a summary judgment for the insurer, and the plaintiff appealed. The appeals court stated:
"In deciding this issue, we do not consider what measure of recovery would make the insured whole after a loss or what would be fair and reasonable compensation for the loss he sustained, for we are not deciding a tort claim. Because the parties' rights and obligations are governed by the contract between them, we instead focus on the plain, unambiguous language of the insurance policy and the ordinary meaning of the words defining the parties' obligations.
"In common usage, `repair' means `to restore by replacing a part or putting together what is torn or broken' or, stated slightly differently, `[t]o bring back to good or usable condition.' There is no concept of `value' in the ordinary meaning of the word. Ascribing to the words `repair or replace' an obligation to compensate the insured for things which, by their very nature, cannot be `repaired' or `replaced' would violate the most fundamental rules of contract construction. If there is a single guiding principle that governs our interpretation of the insuring agreement, it is to give effect to the parties' intent as expressed in the plain language of the written policy."
32 S.W.3d at 464-65 (citations omitted).
The court concluded:
"We hold that where an insurer has fully, completely, and adequately `repaired or replaced the property with other of like kind and quality,' any reduction in market value of the vehicle due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement. Under the `repair or replace' provision of the policy's limit of liability, the insurer's liability is capped at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed immediately before the loss. This obligation does not include liability for any inherent diminished value caused by conditions or defects that are not subject to repair or replacement, such as a stigma on resale resulting from `market psychology' that a vehicle that has been damaged and repaired is worth less than a similar one that has never been damaged. While the insured may well suffer this type of damage as a result of a direct or accidental loss, the plain language of the policy clearly and unambiguously limits the insurer's liability to `the amount necessary to repair or *809 replace the property with like kind and quality.' If the market value of the vehicle, after full, adequate, and complete repair or replacement, is diminished as a result of factors that are not subject to `repair' or `replacement,' the insurer has no obligation to pay the diminution in value. No other reasonable interpretation can be given to the parties' express agreement that the insurer's liability is capped at the amount necessary to `repair or replace.'"
Id. at 465.
The Carlton court rejected or distinguished earlier Texas cases in which the courts held that diminished value was recoverable. See Fidelity & Cas. Co. of New York v. Underwood, 791 S.W.2d 635 (Tex.App.1990)(evidence indicated that insured was entitled to difference in market value before and after car was stolen and found submerged in lake); Northwestern Nat'l Ins. Co. v. Cope, 448 S.W.2d 717 (Tex.Civ.App.1969)(proper measure of damages was difference in value of car immediately before and immediately after collision where essentially new car was worth only $27 more than repair costs after collision); Queen Ins. Co. of America v. Dominguez, 426 S.W.2d 286 (Tex.Civ. App.1968), rev'd on other grounds, 434 S.W.2d 340 (Tex.1968)(where repairs do not substantially restore the substantially damaged automobile to its former condition, the cost of repairs alone is not the proper measure of damages); American Standard County Mut. Ins. Co. v. Barbee, 262 S.W.2d 122 (Tex.Civ.App.1953)(proper measure of damages was difference in value of automobile before it was wrecked and after it was wrecked, repaired, and returned to plaintiff); Stuyvesant Ins. Co. v. Driskill, 244 S.W.2d 291 (Tex.Civ.App. 1951)(if the automobile had been repaired and returned, the proper measure of damages would have been the difference between the value of the car before it was stolen, and the value after it was stolen, recovered, and repaired); Smith v. American Fire & Cas. Co., 242 S.W.2d 448 (Tex. Civ.App.1951)(where repairs to insured's automobile that was damaged in an accident resulted in market value of car being substantially less than market value immediately before the collision, automobile was not restored to the substantially same condition); Standard Accident Ins. Co. of Detroit v. Richmond, 297 S.W. 879 (Tex.Civ. App.1927)(cost of restoring automobile to substantially the same condition means a condition that made the vehicle equal in value to what it was before the accident).
The Virginia Supreme Court of Appeals in Bickel v. Nationwide Mutual Insurance Co., 206 Va. 419, 143 S.E.2d 903 (1965), held that the plaintiffs' recovery was limited to the cost of repairs, storage, and towing, and would not allow the measure of damages to be calculated as the difference in market value before and after the collision. The court concluded that to do so would effectively extinguish the insurer's right to make repairs or replace the damaged part with materials of like kind and quality.
I conclude that an ambiguity exists in the policy in this case as to whether "the cost of repair or replacement" and "to repair or replace the property or part with like kind and quality" includes damages for the inherent diminished value of an automobile resulting from the vehicle being in an accident. I agree with those cases discussed above that have held the phrase "repair or replace with like kind and quality" includes a restoration of both function and value. An insured, under the terms of this policy, could reasonably expect to be put in the same position as he was before to the accident, which would include reimbursement for damages for diminished value. Ambiguities in the language of an *810 insurance policy are construed in favor of the insured, rather than the insurer. Scottsdale Ins. Co. v. Town of Orange Beach, 618 So.2d 1323 (Ala.1993). The insurance policy provides no guidance in that it fails to define "repair," "cost of repair," or "like kind and quality." I further note that the policy fails to specifically exclude or include diminished value. Although an insurance company is entitled to write a policy with narrow limits of liability, to do so it must use precise language. Blackburn v. Fidelity & Deposit Co., 667 So.2d 661 (Ala.1995). Had State Farm wished to avoid paying for diminished value, it should have specifically exempted such damages from coverage as it is attempting to do in other jurisdictions as noted earlier. See note 7.
Insurance policies must be read as a whole, with each provision read in context with all other provisions. Hardnett, supra. If an automobile is a total loss, then State Farm is entitled to depreciate the value of the car to its "actual cash value." State Farm argues that market value of the car applies only when an insurance company elects not to repair the car, then the extent of the coverage is the difference in value immediately before and immediately after the loss. However, it appears that market value is also applicable to the repair or replacement parts when the insurer opts to repair the car. Under this policy, State Farm is entitled to a "betterment"[15] from its insured when it elects to repair an automobile because if the repair or replacement results in "better than like kind and quality, you must pay for the amount of the betterment." By this policy provision, the insurance company is entitled to reduce its payment to an insured by depreciating a new part that would make the car more valuable. By the terms of its own policy, State Farm has applied market value to repair.
Although the majority limits its holding to cases where diminished value is caused by a collision rather than cases where diminished value occurs as a result of some other act, State Farm's policy does not make such a distinction in the damages recoverable in either situation. Comprehensive coverage includes theft and acts,[16] other than collisions, that damage an automobile. Like collision coverage, comprehensive is in the nature of a first-party contract claim. State Farm's policy provides the same damage coverage regardless of whether the claim for the damage is made under comprehensive or collision. While I recognize that Pritchett's car was damaged in a collision, the residual damage to the vehicle would be substantially the same regardless of whether it was involved in a collision or some other act; therefore, any distinction between how the damage occurred is artificial.
Accordingly, I agree with the majority that the issue of diminished value in a first-party contract claim is an issue of first impression. However, I disagree *811 with the majority's conclusion that the terms of the insurance policy do not require State Farm to compensate Pritchett for the diminished value to his automobile.
NOTES
[1] In his complaint, Pritchett defined the class he sought to have certified as follows: "All residents of the State of Alabama who were insured pursuant to a casualty automobile insurance policy or uninsured/underinsured coverage issued by State Farm, who submitted a claim for damages to an insured automobile in excess of $500 from February 11, 1994, through the date this case is certified as a class action, and who did not receive payment for the diminished value as defined herein, and whose claim is not more than $74,000 per class member."
[2] In his complaint, Pritchett alleged that "everyone knows from experience and common sense [that] damaged automobiles, by the very nature of their damage and subsequent repair, are worth less than similar automobiles which have not been damaged."
[3] The record indicates that the insurance policy applicable to this dispute had been amended. The amendment made no substantive changes to the policy. The parties' arguments in the trial court and on appeal pertain only to the language in the original policy; in its summary judgment, the trial court addressed a portion of the policy as amended. For the purposes of this appeal, we have addressed the language from the amended policy.
[4] State Farm also cites Bickel v. Nationwide Mutual Insurance Co., 206 Va. 419, 143 S.E.2d 903 (1965); and various treatises, including Charles Gamble, Alabama Law of Damages (4th ed.1990), John Alan Appleman & Jean Appleman, Insurance Law & Practice (1981), and Patrick D. Kelly, Blashfield's Automobile Law & Practice (4th ed.2001).
[5] The Rhode Island Superior Court is a trial court of general jurisdiction. Cronan ex rel. State v. Cronan, 774 A.2d 866 (R.I.2001); Chase v. Bouchard, 671 A.2d 794 (R.I.1996).
[6] That caselaw includes: MFA Ins. Co. v. Citizens Nat'l Bank of Hope, 260 Ark. 849, 851, 545 S.W.2d 70, 71 (1977); Delledonne v. State Farm Mut. Auto. Ins. Co., 621 A.2d 350 (Del.Super.Ct.1992), overruled by O'Brien v. Progressive N. Ins. Co., 785 A.2d at 287 n. 11; Rezevskis v. Aries Ins. Co., 784 So.2d 472 (Fla.Ct.App.2001); Auto-Owners Ins. Co. v. Green, 220 So.2d 29 (Fla.Ct.App.1969); Ciresi v. Globe & Rutgers Fire Ins. Co., 187 Minn. 145, 147, 244 N.W. 688, 689 (1932); Eby v. Foremost Ins. Co., 141 Mont. 62, 374 P.2d 857 (1962); Edwards v. Maryland Motorcar Ins. Co., 204 A.D. 174, 175, 197 N.Y.S. 460, 461 (1922); Grubbs v. Foremost Ins. Co., Grand Rapids, 82 S.D. 98, 101, 141 N.W.2d 777, 779 (1966).
[7] Pritchett moved for a partial summary judgment on the ground that the policy covered diminished value. In support of his motion, Pritchett presented evidence that the Insurance Services Office ("ISO") has submitted sample policy language, which, if approved, would specifically exclude diminished value property damages in California, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Utah, West Virginia, Wisconsin, and Wyoming. The trial court granted State Farm's motion to strike this evidence and Pritchett does not raise this issue on appeal.
[8] The Florida Supreme Court granted certiorari review in Siegle on October 31, 2001. The status of Rezevskis is unknown.
[9] Those cases are: Dependable Ins. Co. v. Gibbs, 218 Ga. 305, 127 S.E.2d 454 (1962); Hartford Fire Ins. v. Rowland, 181 Ga.App. 213, 351 S.E.2d 650 (1986); Canal Ins. Co. v. Bryant, 173 Ga.App. 173, 325 S.E.2d 839 (1984); U.S. Fire Ins. Co. v. Welch, 163 Ga. App. 480, 294 S.E.2d 713 (1982); Georgia Farm Bureau Mut. Ins. Co. v. Lane, 129 Ga. App. 166, 199 S.E.2d 273 (1973); Travelers Indem. Co. v. Cumbie, 128 Ga.App. 723, 197 S.E.2d 783 (1973); State Farm Mut. Ins. Co. v. Smith, 119 Ga.App. 447, 167 S.E.2d 610 (1969); Simmons v. State Farm Mut. Auto. Ins. Co., Ill Ga.App. 738, 143 S.E.2d 55 (1965); U.S. Fidelity & Guaranty Co. v. Corbett, 35 Ga.App. 606, 134 S.E. 336 (1926); Siegle v. Progressive Consumers Ins., 788 So.2d 355 (Fl.Ct.App.2001); and Bickel v. Nationwide Mut. Ins. Co., 206 Va. 419, 143 S.E.2d 903 (1965).
[10] Relying on Townsend, a court of appeals of Louisiana held that the plaintiff was not entitled to diminished value of his motorcycle in a first-party action against his insurer alleging breach of contract. Campbell v. Markel American Ins. Co., 822 So.2d 617 (La.App.Ct.2001).
[11] The Superior Court of Massachusetts has issued an opinion on the second summary judgment motion filed in this case. That opinion will not be published. However, it does appear on electronic databases. Roth v. Amica Mut. Ins. Co., (No. 98-3551, August 3, 2000)(Super. Ct. of Norfolk County, Mass.)(unpublished).
[12] Cazabat's lawsuit was originally filed as a class action. However, the Rhode Island Superior Court determined that maintaining a class action would not be feasible. Although the court found a common question of fact as to whether the insurer had breached its insurance policies, individual questions would arise in determining liability and damages too numerous to efficiently manage trial, including the fact that whether an insured vehicle suffers inherent diminished value depends on factor such as prior accidents, owner maintenance, quality of prior repairs, prior ownership, and replacement parts, to name a few.
[13] State Farm includes in its brief a copy of a transcript from a hearing in the Circuit Court of Knox County in which the judge announced in open court that diminished value was not a loss covered under the terms of the policy. Tennessee Farmers Mut. Ins. Co. v. Rebmann, No. 2-41-01, June 29, 2001.
[14] According to Pritchett, at least two other Texas courts have addressed this issue since Carlton was released, and those cases have been appealed. Schaefer v. American Manufacturers Mut. Ins. Co., 65 S.W.3d 806 (Tex.App.2002)(policyholder appealing trial court's determination that there was no coverage for diminished value); Macias v. State & County Mut. Fire Ins. Co., No. 13-01-1284-CV (Tex.App.2001)(insurer appealing partial summary judgment in favor of insured wherein the trial court determined that diminished value was covered).
[15] For recent cases discussing betterment, see Delisfort v. Progressive Express Insurance Co., 785 So.2d 734 (Fla.Dist.Ct.App.2001)(class action challenging betterment deduction); Berry v. State Farm Mut. Auto. Ins. Co., 9 S.W.3d 884 (Tex.App.2000)(insurers are not required to use new original equipment manufactured parts to the exclusion of all other parts, but may limit payment to parts of like kind and quality); Great Texas County Mut. Ins. Co. v. Lewis, 979 S.W.2d 72 (Tex.App.1998)(insurer required to pay cost of remanufactured engine without deducting for betterment or depreciation).
[16] Comprehensive coverage under this policy included "breakage of glass, or loss caused by missiles, falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, is payable under this coverage...."